23-2078 FoxCast v. Resi Media Good morning, Your Honors. May it please the Court, my name is Josh Friedman and I represent the appellant FoxCast. The 574 patent claims a live streaming system with remote scheduling that solves the problem of needing complex network setup to control a broadcast device over the internet and behind a router. This problem was expressly claimed, quote, the router prevents remote access to the ABD, end quote, without modification or circumvention of the router. But the Board's claim construction wrote these elements, the problem at the heart of the patent, out of the claims. Yeah, well, the problem is your claim says, the part you quoted, you left out, the predicate, the ABD autonomously performs the following actions without any modification to or circumvention of the router. And you've got a list of six actions after that. And so the Board, I don't know how the Board read that out of the claims because are you telling me the Board allowed something with modification during those six steps? No, the Board, we don't believe that there should be a temporal limitation on the claim. And you shouldn't have put it in the claim. I disagree that there's a temporal limitation at all in the claim. What the claim, the person who's doing the modification is not the ABD. That's clear from the patent. The first column of the patent walks through what these modifications are. There's three examples in the Board. This is one of the few things that we agree on. So where did you say there can never be modification or circumvention of the router? The claim says without modification or circumvention. Yeah, when you perform the following actions. That's what you wrote. So during those actions, is there any modification or circumvention of the router? During those actions specifically, so the claim requires no modification or circumvention of the router. No, that's not what the claim requires. The claim does not require no modification or circumvention. The claim has multiple steps. It's a method claim, right? And it doesn't require no modification or circumvention during all three steps. It only mentions it in the last step. There's a colon, right? It says without circumvention. I'll read the claim because it's simpler. The claim says, and there's two parts. I want to caution against reading this limitation in a vacuum, right? So before that, you have that there's a router that prevents remote access from outside to the ABD. And then it says the ABD autonomously performs the following actions without any modification or circumvention of the router, colon. And I think where the hangup is happening is that the board literally interpreted this limitation too literally to say that the ABD is the one that is not circumventing the router when it's performing these steps. When the patent makes clear that the modification or circumventions that are being talked about are things that the person who's installing the system would do. And so when the person, the router is part of the environment. It's not part of the system. The system is the ABD and the scheduling server and the media server. And the router is in the environment. And when a person, this is the first part of the claim, puts the ABD behind the router, right? From that point forward, they can't modify the router. They can't modify the router to allow communications to flow freely between the router and the outside world. That is the problem that's specified in the first column of the patent. And if you read the claim the way that the board read it and that you seem to be suggesting now, Your Honor, that problem no longer exists. What is your best intrinsic support for your reading of this portion of the claim? There are a couple of places. So I would point first to the entirety of column one of the patent, which lays out the three different kinds of modifications and circumventions. And they talk about how complex and difficult they are. And this is port forwarding and VPN and DMZ. We have evidence in the record for port forwarding, for example. And this is at Appendix 5277. There's a list of instructions that an IT person would have to go through to do port forwarding, right? So that is the example that's given in the patent. And that is not a thing that is done by a device like an ABD. It's not a thing that's done during live streaming. The problem for me is that I don't see you pointing to any specific language in the spec. You want us to expand the scope of a limitation that you claimed. And you're saying because you have to, because that's what really everything in the spec is directed to. And hey, I am open to that. When, for example, the spec says the invention is, or the present invention requires, or something along those lines. So when Judge Cunningham says, what's your best language in the spec, don't just say all of column one, right? Point me to your very best language in the spec that makes it clear that people should not be able to ever modify or circumvent the router when using your claimed method. Right. So I think the point is that the problem that's being solved is avoiding having to circumvent or modify the router. Why does it say that? All right. I'm sorry. I'm getting the patent right here. So the very beginning of column one, and this is appendix 101, line 29. Various systems exist for broadcasting of live or pre-recorded video streams over the  These conventional systems suffer from many drawbacks. For example, in conventional systems, broadcast devices can't be controlled remotely when devices are situated behind a router's firewall. So it's saying right up front, the problem is that you cannot control a device. I understand, but so here's the problem. Specs are very broad, but then you choose to pursue particular claims, and we have not generally read patent claims such that every drawback addressed in the background section is going to be solved by every claim, right? That's not the way we work. That would be bad if we did that. It wouldn't let you focus in and narrow in and protect particular advances. And so where is the language the present invention requires, or something that tells me that this claim should absolutely require this, even if the claim doesn't expressly say it? There's nothing that specific, Your Honor. I'll concede that. But Philips doesn't require something that specific in order to construe a claim. The heart of the problem of this invention is that we want to avoid modifying or circumventing the router. And the board's construction undoes that. Again, that's in up there. Where does the specification explain that this is the heart of the invention? See, that language would be beautiful. If the specification had the language you just said to me, I'd say you win. That that is enough for me to import that limitation into the claim. But I'm not finding that. I would point also to column four, line, that's the paragraph that starts around line 46. General inventive concepts encompass broadcasting devices that sit within a firewall and allow broadcasting to be controlled without breaking any IT department regulations and without requiring any configuration changes to the firewall or the router. So that again is very explicitly telling you that the point of this is that we do not want an IT person configuring the router when we're installing the system. I understand that it doesn't say the problem is this, but it's hard to get more explicit than that language that what we're trying to avoid with this patent and with these claims is that the person who is setting up this system should not have to change the router ever. Okay. Could I ask you, unless there are further questions on this point, could I ask you to turn to the question of whether the board found also that even under your construction that the claims were obvious. And as I understand it, the HTTP protocol does not require any modification of the router. It's a request respond protocol. And that protocol is what you use in this patent to get around the firewall, correct? Yes, but I disagree that HTTP does not require modification or circumvention. And again, that's explicitly in the patent in column one. If that's the protocol that's used here, it must avoid modification or circumvention of the router. It does when using the claim method. What's the difference? The difference is the direction of the communication. If you have a device behind a firewall... I understand, but the idea here is that you send out repeated requests, which is not something you include in the claim language. You send out repeated requests, then the responses will always get through the firewall, correct? That's correct. So it's using the HTTP protocol to do that. So is MAZE. MAZE talks about using the HTTP protocol. So my understanding of what the board found was that both the patent and MAZE used the HTTP protocol to circumvent the firewall. And you say, oh, well, there's a difference because MAZE doesn't talk about doing it persistently. The problem with that is the word persistently doesn't appear in the claims. Yeah, that's not the problem with MAZE. It's not that it doesn't use... You say that in your brief. It's an example. So that's a symptom of another problem. You agree that the word persistently doesn't appear in the claims, right? Correct, correct. The way that we would read the claims is, again, we're reading the limitations together in conjunction. So there's, again, a limitation that says without modification or circumvention of the firewall. There's a limitation of the router. There's a limitation that says that the router prevents remote access. And then you have the request step. And then you have communications coming back after the request step. The problem is they're both using HTTP, MAZE and the patent. Right, but MAZE... And the board explicitly said that that resulted in obviousness. Right, and again, we're not talking about just HTTP in a vacuum. The claim requires requests. That's a claim element. Right, and whether those requests are sent with HTTP or not doesn't really matter. The point is that the way you are getting the claim, the only way you're getting through the firewall is by sending... Or the router is by sending requests from the inside out and getting information back.  But MAZE does not teach using HTTP in that way. MAZE never talks about using HTTP to go through... To get through a router in order to get information back the other way. It does. It specifically does that in several places. I agree that MAZE isn't limited to using HTTP, but it does use HTTP. It does, but not for that purpose. MAZE does not concern itself with getting through a router. It's not a part of MAZE. What MAZE talks about is something called protocol filtering, which is when... And this is getting a little in the weeds here, but... Would it be okay if I moved him on to the secondary consideration issue just so he addresses it in his opening argument? What is your argument regarding the board's error on secondary considerations? Right, so the board didn't give... There's two arguments. There's a piece of evidence, or a group of pieces of evidence, that we call ECHO 360, that relates to a product that... ECHO 360 isn't a piece of prior art. A piece of prior art is the Allen reference, correct? That's correct. So the two arguments are, number one, that that evidence... We showed sufficiently that that was an embodiment of Allen, or at least it was made by the same guy that did Allen. What's that have to do with it? The question for Nexus is whether it embodies the limitations of the claims of the patent, not whether it embodies Allen. Agree. Agree. And this is not a secondary considerations argument, and I think that's where the confusion came in, is that one way we're using this evidence is to show that all of these things that the board found inherently were in Allen were not in this product that Allen actually made, and that should be evidence against the fact that you would read these limitations in town. He just won't ask you about your secondary considerations argument, so why don't we focus on... I'll pivot there, yes. So the other... Are we making a secondary considerations argument? Yes, we are also making a secondary... Are we relying on 360 as providing Nexus? We are relying on... No, answer. Are you relying on 360 as providing the Nexus? I think that's incorrect. I think we're relying on BoxCast... the praise of BoxCast's product from the owner of Echo360. That's what we're relying on. What does the 360 have to do with it? There's no contention that embodies the limitations of the patent? Echo360 was the owner that came to BoxCast. So what? I mean, if... I suppose it doesn't matter. I think it does matter because the person who's giving the praise is the owner of the prior art reference. I think that should count for something. But the Nexus is in the praise, right? The emails that are talking about BoxCast's product from Echo360 say, we love your capture device, which is the claimed AVD. They say it's very plug-and-play, which again, that is the solution to the problem that's claimed, right? It's plug-and-play because you can plug it in without modifying the router, and it just worked. And they talk about the quality of the stream, and they talk about... I think what the board found is that you didn't establish a link between that praise and claim elements or claim features. Is the board wrong about that?  So where did you establish that? Where is your best evidence where you established that? Again, it's the words of the email that I just said. So the email is on... But here's the problem. If I say your device is great, that is not a Nexus. Maybe your device is really great for reasons that don't have to do with the claim language. So what precise language in the praise... I'll restore some rebuttal time, don't worry. What precise language in the claim is their praise kind of pulled into? Yeah, so I'll try to articulate that again, because I agree. They're not just saying it's great. They're saying it's great because of these reasons, and those reasons are the broadcasting device, which is the claimed ABD. Those reasons are plug-and-play. Even though the 360 doesn't embody the patent claims. Excuse me? The 360 doesn't embody the patent claims. We contend that Echo360 is the same as Allen, and Resi in their petition said that Allen embodies the patent. But that's not the same thing as you're establishing that Allen and the patent are the same, because if you did establish that, then you'd lose on obviousness on the connection. No, I think we did establish, again, also that Echo360 has a lot of the limitations that are in the claim. A lot of the limitations? That's not enough for Nexus. I believe it is, Your Honor. We cited the Classco case, for example, that you only need to show everything for a presumption. It's not black or white. If you don't get the presumption, you still get Nexus. No, you don't still get Nexus unless you establish Nexus. Right, but Nexus is not black or white. I'm looking at the email itself. This is what I think is your best email for praise. If you think there's a different email for praise, you let me know. I'm on 4438. Do you have that? Yes. 4438. If you think there's a better praise email, I'm happy to look at it. The two best ones for you were 4435, but that just says your video recording is awesome. And then 4438 has a little more specificity. It says very plug-and-play, which I think is what you're trying to get at. So I think this is your strongest potential email. If there's a different one, and you'd rather have us look at that with no time left, which one do you want me to look at? 4438 is probably the best. That's what I thought, too. So what it says is, we enjoyed testing your device. Well, that's not praise about your patented features or the claimed invention. Then it says, we found it to be easy to set up and get started, very plug-and-play. So I assume that that is what you say is tied to somehow the patented features? That is the problem and solution. It's the fact that you could plug it in without having to modify it or circumvent the firewall. Because it's not the quality of the streams produced were high quality. That doesn't have anything to do with it. It does, Your Honor. We had an argument below that the ABD... Where is that claim? You show me that claim, and you tell me what limitation has to do with better stream quality. The ABD. We had an argument below that the ABD isn't just a general-purpose computer. I am looking at Claim 1. I don't care what you say about an ABD. All that matters to me is what Claim 1 requires with regard to the ABD. So what element of Claim 1 is tethered to the quality of the video stream? Again, it's two. It's not just the ABD. It's also the live streaming servers. These are the media servers that are in the claim. The fact that we're not streaming out from just the ABD itself, but we're then pushing that information out to another server to do the streaming. I guess I was not able to be understood. Which claim element? So receive data relating to the... Oh, I'm sorry. Transmit digital content via the internet connection to the second server contemporaneously with the live event and based on data relating to a recording start time. And I will add also that we've used Claim 1 as representative, but the other independent claims here go from the perspective of the live streaming server. And those claims do specifically talk about streaming from that media server But you didn't take those arguments out on appeal to us. You focused on Claim 1. That's all I can focus on is what you argued in the briefs. Okay, thank you very much. I'll restore your rebuttal time. If you don't mind, I'm sorry, please introduce yourself. May it please the court, Sanford Weisberg for Resi Media. If you don't mind, would you start where he left off with the secondary considerations and we'll work backwards just because it's kind of fresh in my mind. Yes, so starting with the lack of a link between Echo360 and the Allen reference, we think the board was relied on substantial evidence there and finding that was not enough. There was no... Okay, well disregard that. On the email... Praise doesn't have to be clearly linked or tethered to some piece of prior art. That was a red herring.  But this praise does say and it is from somebody in the industry, so that's the kind of praise that would matter. We found your device very easy to set up and get started, very plug and play. Why doesn't that sort of go to what they are really claiming the nature of their overall invention was? Okay, at the threshold, they did not argue praise at the board. They do argue it in their brief in this court but they did not argue it although they argued failure of others and specifically with regard to Echo360. In terms of setting aside that waiver...  So they argued praise to us. That's what I understood their argument to be. And if you did this, forgive me, you just had to help me. In your brief, did you say that argument was waived? We did. Okay. Yes. So you said the argument of praise was waived. We did. And I could point to an appendix site as well. Just bear with me for one second. 523 of the appendix is the BoxCast patent owner response at the board relying on failures of others and not on praise. But I do want to address the merits of this as well in the event that the court disagrees with me on waiver. And I think... Tell me where you argued waiver because I missed it. Yes. Where did you argue waiver in the red brief if I see it? Bear with me one second. It's on page 35 of our brief, of the red brief. Okay. Yep. Yep. And then we also go on to address the merits after the waiver point. And I think when we look at things like, quote, very plug and play very easy to set up very easy and intuitive with high quality streams I think your honor already addressed high quality streams I'll set that aside. But very plug and play. What does that mean exactly? We have... It's not connected to something like the hidden ABD problem. It's not connected to your IT person at your site doesn't need to do anything because it's already been pre-configured at the factory. It's just a very general assertion that's not tied to the language of the claim. And that was their burden    as the patent owner to establish that sort of link between praise. And again, not arguing ECHO 360 here. I am arguing waiver and I'm also arguing that this is just the general type of praise that in cases like ClassCo and others is too general to support obviousness. But even if it were, we think that the support on the prior art references for obviousness under Allen and Mays is more than sufficient to override that. And I'd like, if I could, to go to one point on Mays. We heard from my friend on the other side that Mays does not    address HTTP being able to get through a router. To the contrary, Appendix 2593, Mays specifically addresses that HTTP is able,  to be able to tunnel through a router. So we do have Mays getting through that. And then we heard also, well, Mays doesn't address who starts the request and is it done by the ABD. But that's where Allen comes in. Allen has what's called a multimedia capture device, which is the analog of the ABD. And it's clear     in Allen, and at least the board had substantial evidence to find, that the MCD in Allen is initiating that request to get access to the schedule. It's almost, it's striking how similar it is to our patent. And frankly, one could probably have relied on Allen as disclosing all of the elements. But Allen, to be fair, does not explicitly say HTTP. It would be sort of inherent or assumed. So to Belt and Suspenders, we looked at Mays, which also on 2593 does explicitly address internet, explicitly addresses tunneling through, using HTTP to get through a router. So we do, we agree with the point that under,  of the claim construction, that because we only relied on Mays for HTTP, and we relied on Allen for the rest of it, that we, it doesn't matter whether there was configuration or modification. You could just assume box cast construction, we still prevail. But we also argue, of course, that the board was correct in its claim construction. We do think that the plain language ties those six actions, only those six actions to the without modification or circumvention limitation. And I wanted to just also draw the court's attention to one,  excuse me, the patent, and, excuse me, the board's decision, 14 to 15, the board talks about,  this temporal aspect and the, when can configuration occur, it's Resi's and in turn the board's position that the modification can occur before this streaming, these six steps occur, and we think that the board also relied in making that conclusion on the patent, specifically column 17, this is at appendix 109,  sorry, lines 54 to 60, it talks about certain pre-configuring of the system that can happen at the factory and therefore need not be done by an IT person on site. That still is a modification or circumvention that's occurring. So we think that's added support and I want to draw. In appendix 109, just for clarity, what column were you looking at? We're looking at column 17 on 109, lines 50, 56 to 60. And I wanted also to mention one other site that the board had before it, which was Resi's expert, Dr. Easton, who explained that there's always some configuration of the router required, at least at the factory where it's set up. And so to make their claim operable, you have to allow that and that again supports the plain language interpretation of the claim. Unless the court has further questions, I would ask that the board be affirmed. All right. Thank you very much. Mr. Friedman, you have some rebuttal time. The floor is two minutes. Thank you. Thank you, Your Honor. I would like to turn first to secondary considerations and say that we did make a failure argument below, but it was the same evidence and so I'm not sure that it matters that we call it praise. I think we said it, the way we said it in our brief is that one person's failure is another person's praise, that the fact that they couldn't do it. Wait, wait. Would you at least         agree though with the statement that was in the red brief that you didn't separately make the argument as an industry of praise argument? We didn't say praise. We said failure of others, but we don't think that's a waiver issue because it's the same evidence and it's essentially the same argument. I would also like to address the part of my other counsel's brief that he talked about with regard to Mays and he talked about tunneling end-to-end through Mays. That is not at all what's happening in the patent. I started to talk about that briefly before. What that is is sometimes routers will be set up to certain protocols to block them and what this does is it uses the word piggybacking. It'll stick a protocol that is banned inside of another one that is not banned and so it'll trick the router into letting that through. That's what Mays is all about. It has nothing to do with the type of communications that are happening in our patent and in our claims. That is why we ask that Mays not even be considered because it is non-analogous art. The board found that it was analogous art solely because it has servers and it goes over the internet. That was literally the board's finding as to why that was analogous art and as we said we believe that that is such a broad way of addressing analogous art that it would capture half of all inventions in the 21st century. That cannot be enough. We do not believe that it requires literal one-to-one showing that needs to be exactly the same but the Inouye-Dominski case says that there needs to be a substantial similarity between the structures if the... You never argued analogous art in your opening argument. In our briefs? We did, yes. No, here in your oral argument. Oh, I did not have time to address it, Your Honor. So I'm saying it now. My time has ended. Is there anything else? We thank both counsel as case is taken under submission.